**UNITED STATES of America,**
**Plaintiff,**

v.

**Nakisha Winfrey WINTERS,**
**Defendant.**

**No. 4:08–cr–00085.**

United States District Court,
S.D. Iowa,
Central Division.

Jan. 9, 2009.

ernment in the case that the applicant alleges were not substantially justified."

Mary C. Luxa, U.S. Attorney's Office, Des Moines, IA, for Plaintiff.

Sean P. Spellman, Witherwax & Spellman Law PC, West Des Moines, IA, Robert A. Wright, Jr., Wright & Wright, Des Moines, IA, for Defendant.

### ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court is Nakisha Winter's ("Defendant") Renewed Motion for Judgment of Acquittal (Clerk's No. 43) and Motion for New Trial (Clerk's No. 44), filed on December 3, 2008. Defendant failed to file briefs in support of either motion.[1] The Government filed a resistance on December 15, 2008. Clerk's No 46. The matter is now fully submitted.

### I. PROCEDURAL BACKGROUND

On June 24, 2008, a grand jury returned an indictment charging Defendant with one count of false declarations before a grand jury, in violation of 18 U.S.C. § 1623. Clerk's No. 1. Defendant elected to stand trial on this charge, and the trial

---

**1.** Motion procedure in a criminal case is governed by Local Rule 7, which provides: "For every motion, the moving party must prepare a brief...." *See* L. Cr. R. 47(a). Counsel is reminded of the importance of complying with local rules.

commenced on November 24, 2008. Clerk's No. 35. On November 25, 2008, a jury returned a verdict of guilty against her. Clerk's No. 36. At the close of the Government's case-in-chief and at the close of all the evidence, Defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Tr. at 108–09, 167 (all transcript references refer to the daily unedited transcript provided by the court reporter to the Court). The Court denied Defendant's motions. *Id.* Defendant now renews her motion for judgment of acquittal made at trial. Clerk's No. 43. Defendant generally argues that the Government failed to present sufficient evidence to sustain a conviction. Def.'s Mot. for J. of Acquittal ("Def.'s Acquittal") ¶ 4. In addition, Defendant makes the specific argument that the Government failed to establish the materiality element of the offense because it failed to demonstrate that John Winters possessed a weapon. *Id.* ¶¶ 5, 6. In the alternative, Defendant moves for a new trial based upon both the verdict being against the weight of the evidence and an irregularity in the jury deliberations.[2] Def.'s Mot. for New Trial ("Def.'s Mot.").

## II. ANALYSIS

### A. *Motion for Judgment of Acquittal*

■ This Court must enter a Judgment of Acquittal if the evidence presented at trial is insufficient to sustain a conviction. Fed.R.Crim.P. 29(a); *United States v. Water*, 413 F.3d 812, 816 (8th Cir.2005). "This standard is 'very strict' and a jury's verdict should not be overturned lightly." *United States v. Boesen*, 491 F.3d 852, 855 (8th Cir.2007) (quoting *United States v. Ellefson*, 419 F.3d 859, 862 (8th Cir.2005)). Although Rule 29 contemplates the occurrence, it is well-settled that "[j]ury verdicts are not lightly overturned."[3] *United States v. Hood*, 51 F.3d 128, 129 (8th Cir. 1995). Therefore, "[a] motion for judgment of acquittal should be granted only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Cacioppo*, 460 F.3d 1012, 1021 (8th Cir.2006); *accord United States v. Moore*, 108 F.3d 878, 881 (8th Cir.1997) (instructing that "[t]he jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt").

■ In considering a motion for judgment of acquittal based on the sufficiency of the evidence presented at trial, the Court must "view the evidence in the light most favorable to the guilty verdict, giving the government the benefit of all reasonable inferences that may be drawn from

---

**2.** Defendant fails to expressly request a new trial on the basis that the verdict is against the weight of the evidence. However, Defendant's Motion for New Trial does state that: "The evidence before the court was not sufficient to support the jury's finding of guilt." Def.'s Mot. ¶ 10. The Court will broadly construe Defendant's statement to include a challenge to the weight of the evidence because an individual's liberty is in jeopardy.

**3.** Indeed, to do otherwise would risk displacing the jury as the principle trier of fact, thereby establishing the Court in a role the Constitution expressly delegated to the peo-ple. In the sage words of a fellow district court, "[T]he jury is an institution of central importance in our system of government, and courts must jealously guard against encroachments on the jury's province. It is the jury to which the founders of this nation turned to fill the role of impartial fact finder. Its primacy is guaranteed by the United States Constitution, and the American jury system is our most vital day-to-day expression of direct democracy." *United States v. Green*, 346 F.Supp.2d 259, 316 (D.Mass.2004), *vacated and remanded on other grounds by United States v. Pacheco*, 434 F.3d 106 (1st Cir.2006).

the evidence." *United States v. Basile,* 109 F.3d 1304, 1310 (8th Cir.1997). The Court can overturn the jury's verdict only if " 'a reasonable fact-finder must have entertained a reasonable doubt about the government's proof' " on one or more of the essential elements of the crime charged. *United States v. Kinshaw,* 71 F.3d 268, 271 (8th Cir.1995) (quoting *United States v. Nunn,* 940 F.2d 1128, 1131 (8th Cir.1991)). In reviewing the evidence presented to the jury, it is important to note that " '[t]he evidence need not exclude every reasonable hypothesis except guilt.' " *United States v. Baker,* 98 F.3d 330, 338 (8th Cir.1996) (quoting *United States v. Erdman,* 953 F.2d 387, 389 (8th Cir.1992)). Finally, it is not the Court's role to weigh the evidence or assess the credibility of witnesses, as these tasks belong to the jury alone. *See United States v. Ireland,* 62 F.3d 227, 230 (8th Cir.1995) (observing that the jury has the role of judging the credibility of witnesses and resolving any contradictions in the presented evidence).

■■■■ The Government presented sufficient evidence to the jury from which it could reasonably conclude that Defendant made false declarations to the grand jury.

To establish a perjury case under 18 U.S.C. § 1623, the government must prove that (i) while under oath, and (ii) testifying in a proceeding before a court of the United States, (iii) the defendant knowingly made, (iv) a false statement, and (v) the testimony was material to the proof of the crime. . . . The test for

the fifth element of perjury, materiality, is whether the alleged false testimony was capable of influencing the tribunal on the issue before it.

*United States v. Sablosky,* 810 F.2d 167, 169 (8th Cir.1987) (internal citations omitted); *see also United States v. Blanton,* 281 F.3d 771, 774–75 (8th Cir.2002) (reciting the five elements of the offense and phrasing the test for materiality as "whether or not the statements alleged to be perjurious tend to impede or hamper the course of the investigation by the grand jury") (internal quotation omitted). In this case, there is no dispute that Defendant, on May 21, 2008, testified under oath before a grand jury investigating whether her husband, John Winters, was a felon unlawfully in possession of a firearm. There is also no dispute that, at those proceedings, Defendant denied that John Winters was present when she bought her firearm, that he had subsequently handled the weapon, or that he brought the ammunition into the house.[4] Instead, the dispute between the parties is whether Defendant's statements at the grand jury proceedings were false and whether those statements were material.

The Government presented sufficient evidence that Defendant knowingly testified falsely to the grand jury. At trial, ATF special agent Philip Pritchett ("Agent Pritchett") testified that Defendant told him prior to the grand jury hearing that "John [Winters] was with her when she bought the gun in Adventureland in the

---

4. Excerpts from the grand jury hearing read:
 Q: Isn't it correct that you told the agents that John Winters was with you when you purchased the gun?
 A: That's not true. They were putting words in my mouth and doing all the saying, you know, and writing stuff down. I didn't say anything.
 Q: Isn't it also correct that you told the agents that Mr. Winters was aware of the gun's presence in the bedroom closet because he had handled the gun many times?
 A: I did not say that. That is not true. . . .
 Q: Isn't it true that you told the agents that Mr. Winters brought the ammunition into the house, and that you were not sure where it came from?
 A. No, I did not tell them that he brought the ammunition into the house.
 Tr. at 83–84.

gun show, and he had loaded the magazine, put the rounds in the magazine for her, and that he was the one that showed her how to manipulate the weapon." Tr. at 31. Agent Pritchett also testified that Defendant indicated John Winters "knew where the gun was [in the house], and that he had handled it in the past," in addition to stating that "John probably brought [the ammunition] into the house." *Id.* at 31–32. Special agent Kenneth Arduser ("Agent Arduser") of the narcotics enforcement division of the Iowa Department of Public Safety also testified that Defendant told him John Winters was with her when she bought the weapon and that he had handled the weapon many times. *Id.* at 61–63. Defendant's alleged statements to the agents are clearly inconsistent with her statements to the grand jury. Since the Court views the evidence in the light most favorable to the Government and does not weigh credibility in this stage of the analysis, the Court accept the agents' testimony as true. Consequently, the Court finds that sufficient evidence existed for a reasonable jury to conclude that Defendant knowingly provided false testimony to the grand jury.

 The Court also finds that Defendant's statements were material. As mentioned earlier, the test for materiality is whether the "alleged false testimony was capable of influencing the tribunal on the issue before it." *Sablosky,* 810 F.2d at 169 (8th Cir.1987) (internal citation omitted). The Government need not prove that the false statement actually influenced or misled the grand jury. *United States v. Jackson,* 640 F.2d 614, 617 (8th Cir.1981) (citing *United States v. Giarratano,* 622 F.2d 153, 156 n. 7 (5th Cir.1980)). In this case, Defendant testified that John Winters had not possessed a firearm to a grand jury investigating whether John Winters had violated the law by possessing

a firearm. As such, her statements bore directly on the core issue before the grand jury, and thus, her false testimony was material. This case is no different than *United States v. Armilio,* 705 F.2d 939 (8th Cir.1983). In that case, a defendant had testified that a particular felon was not with her when she bought a firearm, despite law enforcement surveillance to the contrary, to a grand jury investigating whether that felon was in possession of a firearm. *Id.* at 939. The Eighth Circuit quickly found her testimony material because it "certainly tended to impede or hamper" the grand jury's investigation. *Id.* at 942. Defendant's argument that her statements were not material because the Government was required to prove that "John Winters possessed a firearm" misses the mark. The Government had no such burden to prove John Winters ever possessed a firearm or even that Defendant's testimony influenced the grand jury's decision. Consequently, the Court finds no reason to disturb the jury verdict by granting a judgment of acquittal.

### B. *Motion for New Trial*

 Federal Rule of Criminal Procedure 33 provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The district court is granted broad discretion in passing upon motions for new trial, and its decision is subject to reversal only for a clear abuse of discretion. *See United States v. Bass,* 478 F.3d 948, 951 (8th Cir.2007) ("A district court's 'determination that a new trial should be granted on the ground that the verdict is against the weight of the evidence is entitled to great deference and is reversible only upon a strong showing of abuse.'") (quoting *King v. Davis,* 980 F.2d 1236, 1237 (8th Cir.1992)). Unlike a motion made for judgment of acquittal pursuant to Federal Rule of Criminal Procedure

29, the Court need not consider the evidence on a Rule 33 motion for new trial in the light most favorable to the Government. Rather, in assessing whether Defendant is entitled to a new trial on the ground that the verdict is contrary to the weight of the evidence, "the district court weighs the evidence and evaluates anew the credibility of the witnesses to determine if a miscarriage of justice may have occurred." *United States v. Davis,* 103 F.3d 660, 668 (8th Cir.1996); *United States v. Lanier,* 838 F.2d 281, 284–85 (8th Cir. 1988) (per curiam). As the Eighth Circuit Court of Appeals explained in *United States v. Rodriguez:*

> "When a motion for a new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is whether he is entitled to a new trial. In assessing the defendant's right to a new trial, the court must weigh the evidence and in doing so evaluate for itself the credibility of the witnesses." *United States v. Lincoln,* 630 F.2d [1313] at 1316 [ (8th Cir.1980) ]. The court will only set aside the verdict if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred. We will not reverse the district court's decision absent a clear and manifest abuse of discretion. *United States v. Bonadonna,* 775 F.2d 949, 957 (8th Cir.1985); *United States v. Ferguson,* 776 F.2d 217, 225 (8th Cir.1985); *United States v. Bohn,* 508 F.2d 1145, 1150 (8th Cir.1975).

812 F.2d 414, 417 (8th Cir.1987). The Eighth Circuit has also warned that the authority to grant a Rule 33 motion for new trial "should be used sparingly and with caution." *Lincoln,* 630 F.2d at 1319. Nonetheless, if the Court finds that " 'despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, [the district court] may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.' " *United States v. Huerta–Orozco,* 272 F.3d 561, 565 (8th Cir.2001) (quoting *Lincoln,* 630 F.2d at 1319). The district court's discretion in determining that a new trial is warranted "is abused if it does not take into account a matter that should have been given significant weight, gives significant weight to something improper or irrelevant, or 'commits a clear error of judgment.' " *Bass,* 478 F.3d at 951 (quoting *United States v. Dodd,* 391 F.3d 930, 934 (8th Cir.2004)).

 Defendant indirectly argues that the verdict is against the weight of the evidence, although she provides no specific argument as to why. With some hesitation, the Court disagrees. Both special agents essentially testified that Defendant told them John Winters possessed her firearm repeatedly. Defendant provided these statements during a fairly cordial and non-coercive conversation with the agents. Defendant was at her home where she freely answered their questions and showed them the location of her firearm. Tr. at 24–32. She also provided consent to search the residence. *Id.* Thus, her statement to the agents and the agents' testimony about those statements appear very credible to the Court, while her subsequent grand jury testimony to save her husband from prosecution does not. However, Agent Arduser has a disturbing personnel record, which was the subject of the Motion in Limine (Clerk's No. 17), that casts some doubt on his credibility even though there are technically no founded claims of improper conduct against him. Tr. at 64. Moreover, Agent Pritchett's willingness to either implicitly or explicitly threaten to take away Defen-

dant's children should she not testify before the grand jury that John Winters possessed a firearm also jeopardizes his credibility.[5] Tr. at 138, 161–62. Additionally, Defendant put the agents' credibility in question when she took the stand to deny making the statements to the agents and when she called John Winters, who denied possessing the firearm. Tr. at 92–93, 133–35. After evaluating all the evidence, though, the Court is not persuaded by Defendant's denials and credits the testimony of the agents. Consequently, the Court finds no reason to disturb the jury's verdict for being against the weight of the evidence.

 Defendant's second argument is equally unpersuasive. Defendant argues that "[t]here is a reasonable probability that a miscarriage of justice occurred in the deliberations of the jury" because, during the jury deliberations, the jury violated the Court's instructions by sending a note to the Court indicating its current numerical division (seven not guilty and five guilty). Def.'s Mot. ¶¶ 5–7. In the Eighth Circuit, while " '[i]t is improper for a trial court to ask a deadlocked jury about its numerical division, a proper [*Allen*] instruction may nevertheless be given if the jury's numerical division is given, without solicitation, by the jury [foreperson].' " *United States v. Johnson*, 114 F.3d 808, 814 (8th Cir.1997) (quoting *United States v. Cook*, 663 F.2d 808, 809 n. 3 (8th Cir. 1981)). In this case, the Court did not even give an *Allen* instruction. The Court simply sent the jury back to the jury room to continue deliberating after the jury, without solicitation of the Court and despite a contrary jury instruction, informed the Court of its numerical division. While the Court is troubled by the failure of the jury to follow all of its instructions, the Court cannot conclude that a miscarriage of justice occurred. Moreover, the Court cannot find any other procedural or substantive irregularities in the jury deliberations. Therefore, the Court will not disturb the jury's verdict by ordering a new trial on the basis of irregularities in the jury deliberations.

### III. CONCLUSION

For the reasons discussed above, Defendant's Renewed Motion for Judgment of Acquittal (Clerk's No. 43) and Motion for New Trial (Clerk's No. 44) are DENIED. The Court sees no basis on which to disturb the jury's verdict against Defendant, and no indication that a new trial is required in the interest of justice.

IT IS SO ORDERED.

---

**5.** The Court finds such tactics abhorrent. Children are not pawns to be used by the Government to gain leverage over their parents. The mere fact that this strategy is often effective does not justify utilizing it.